946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
W. Edward PIERCE, Defendant-Appellant.
 No. 91-5321.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant W. Edward Pierce appeals his guilty verdict and sentence for one count of injuring government property worth more than $100. In support of his appeal, the defendant cites abuse of discretion by the trial judge in allowing the government to ask certain questions of the defendant concerning his knowledge of another's past criminal history, failure to give a requested jury instruction, and error in the calculation of damages for sentencing purposes. For the reasons stated below, we AFFIRM the verdict and sentence of the District Court.
 
 I.
 
 2
 Defendant W. Edward Pierce owns property in Dunlap, Tennessee. The property contains power lines owned by the Tennessee Valley Authority (TVA) which run along the road at the front of his lot. Evidence introduced at trial suggests that the power lines and TVA's right of way were not being properly maintained at the time Pierce purchased the property or at the time of the offense. The defendant contacted TVA in November 1989 about the possibility of purchasing TVA's right of way and removing the power lines. TVA representative Doyle Parsons informed defendant that TVA was unlikely to allow the purchase.
 
 
 3
 On January 8, 1990, the sheriff's department in the county in which defendant's property was located saw three individuals removing wire from the power lines on defendant's property. These three individuals, Jerry Brown, Wiley Dean Brown and Charles Sims, told the sheriff's representatives that they had permission from Pierce to remove the wire. When contacted, the defendant only admitted to giving another individual, Cam Goins, $100 for cutting dangling wire from the tower. At trial, evidence was introduced which showed that in fact defendant, through his friend George Hendricks, made contact with the three men found removing the wire. Defendant offered the men $100 and possession of the removed wire if they would cut three dangling wires from the tower. The defendant was indicted for willful injury of government property in violation of 18 U.S.C.ss 1361 and 1362.
 
 
 4
 On December 17, 1990, a jury found the defendant guilty. At the sentencing hearing, the judge sentenced the defendant to eight months in prison, fined him $10,000, and ordered him to pay $5,000 in restitution to the Tennessee Valley Authority. Defendant appeals the verdict and the sentence.
 
 II.
 
 5
 Defendant asserts that the trial court made several errors. First, it allowed the government to make certain comments when questioning the defendant about his acquaintance with George Hendricks and Hendrick's criminal history. Second, defendant objects to the government's questions relating to defendant's involvement in other illegal activities related to TVA. Finally, the defendant claims that the District Court erred in failing to instruct the jury as to the weight to be given informant's testimony. Because we find that the defendant admitted to all the elements of the crimes with which he has been charged, the above errors, even if shown, would be harmless.
 
 
 6
 The indictment charged that defendant did "knowingly, willfully, and unlawfully injure and commit, and knowingly, willfully, and unlawfully did cause the injuring and commission of, depredation against transmission line wire and other property of an agency of the United States." Defendant admitted during his testimony that he contacted some men through Hendricks, hired them to climb the metal towers and cut the power lines, told Goins where to sever the wire, and paid Goins $100 for the job. He also admitted that he knew the wires and towers were the property of TVA. This testimony clearly establishes all of the elements constituting the crime charged in the indictment. When a defendant admits to the crime charged, any errors on the part of the trial court relating to admission and weight of evidence proving the commission of the crime are ordinarily harmless and are harmless here. No reasonable juror could fail to convict defendant on his own testimony.
 
 III.
 
 7
 The defendant also contends that the trial court erred in calculating the damages to be used in computing the appropriate sentence under the Federal Sentencing Guidelines. The District Court judge estimated the approximate damage done to the power lines by the defendant to be $5,000. This figure was used in establishing a sentencing range of 4-10 months. If the maximum amount of loss attributed to the defendant was $1,553 as the defendant claims, the sentencing range would be 2-8 months. The defendant was sentenced to 8 months.
 
 
 8
 Substantial evidence was presented at trial that the right of way and the power lines were not being maintained at the time defendant purchased the property. Evidence was also introduced which indicates that unknown persons had removed some wire from the premises well in advance of the time defendant contacted persons to remove wire. Based on this testimony, defendant argues that he should be responsible only for the wire which the men were removing on January 8, 1990. He estimates the value of the wire, various equipment necessary to reinstall the wire, and the cost of the labor to install the wire to be $1,533.39. The government originally estimated the cost of repair to be $8,764.18.
 
 
 9
 In reviewing the cost of repairs at the sentencing hearing, the judge noted that TVA's assessment of repairs included the repair to the lines between Towers 329 and 330. There was testimony that lines were already down when defendant hired the men to cut the wire. The court accepted testimony of TVA's expert who estimated the costs attributable to those lines to be 30% of the total cost. It then deducted that 30% from TVA's estimate to bring down the estimated costs to $5,837.43. It rounded this number to $5,000 for sentencing purposes.
 
 
 10
 The record of this case shows that the District Court was presented with evidence both during trial and during the judgment hearing on the cost of the repairs attributable to the defendant's conduct. The District Court's decision to accept the testimony of the TVA's expert is within its discretion. We find the valuation of the repair costs adequately supported by the evidence and not clearly erroneous.
 
 IV.
 
 11
 For the reasons stated above, we AFFIRM the decision of the District Court.